**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | 89-cr-36 (RCL) |
| | ) | |
| MICHAEL PALMER, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | |

**MEMORANDUM OPINION**

### I.  Introduction

Pending before the Court is petitioner[1] Michael Palmer's Updated Motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. [377, 378]. After carefully reviewing the petitioner's updated filings, the United States' responses, relevant earlier filings from petitioner, and applicable law, the Court will GRANT petitioner's § 2255 motion in part and DENY it in part.

### II.  Background

#### A.  Factual History

Mr. Palmer presided over a large-scale drug business which imported large amounts of cocaine from New York City and distributed it in Washington, D.C. in the late 1980s. At petitioner's sentencing hearing, Judge Harold Greene observed that Mr. Palmer's organization "created havoc and misery in their path" for several years, selling an "estimated 100 and 200

---

[1] Acknowledging that "[a]n application for relief under § 2255 is properly termed a 'motion,' rather than a 'petition,' the term used in habeas corpus proceedings challenging state court criminal judgments under 28 U.S.C. § 2254," United States v. Hicks, 283 F.3d 380, 383 (D.C. Cir. 2002), this court follows popular convention (as evidenced by both parties' briefs) and refers to Mr. Palmer as "petitioner" rather than "movant."

kilos of crack into the city," for which they earned a total of "perhaps as much as 5 to $10 million." Transcript of Sentencing at 2, United States v. Palmer (D.D.C., 89-cr-36, Oct. 18, 1989). In addition to supplying "thousands of men, women and children with crack," id. at 2, the organization possessed "at least 27 guns, including a machine gun, submachine guns and sawed-off shotguns" that it used to "terrorize and intimidate peaceful citizens as well as rival gangs." Id. at 9-10.

Mr. Palmer was arrested on January 12, 1989. See Petitioner's Updated Motion to Vacate [378] at 3 n.2. In a 23-count indictment, the United States charged Mr. Palmer and seven co-defendants with multiple narcotics and firearm offenses.

Following a jury trial, Mr. Palmer was convicted on 12 Counts. At sentencing, the Court remarked that "[i]n the 25 years . . . that I have been on the bench, I have seldom, if ever, seen a case in which the evidence was as overwhelming as it was in this case . . . and particularly [as to] the guilt of Mr. Palmer." Transcript of Sentencing, at 7.  The Court sentenced Mr. Palmer as follows:

- Count 1 - Conspiracy to distribute and possess with intent to distribute crack and powder cocaine between January 1987 and January 12, 1989 in violation of 21 U.S.C. §§ 841(a) & 846.

  - Sentence: life imprisonment.

- Count 2 - Being the organizer, supervisor or manager of a continuing criminal enterprise (CCE) that involved at least 1500 grams of cocaine base between January 1987 and January 12, 1989 in violation of 21 U.S.C. § 848(b).

  - Sentence: life imprisonment without parole (LWOP).

- Count 3 - Conspiracy to use or carry firearms during and in relation to drug trafficking crimes between January 1987 and January 12, 1989 in violation of 18 U.S.C. §§ 371 & 924(c).

  - Sentence: 5 years.

- <u>Count 4</u> - Use of juveniles in drug trafficking offenses between January 1987 and January 12, 1989 in violation of 21 U.S.C. § 845(b) & 18 U.S.C. § 2.

    - <u>Sentence</u>: 20 years.

- <u>Count 5</u> - Possession with intent to distribute five grams or more of crack cocaine on or about March 3, 1987 in violation of 21 U.S.C. §§ 841(a) & 841(b)(1)(A)(iii) & 18 U.S.C. § 2.

    - <u>Sentence</u>: 5 years.

- <u>Count 6</u> - Using or carrying a firearm in relation to a drug trafficking crime between November 16, 1987 and January 29, 1988 in violation of 18 U.S.C. §§ 924(c) & 2.

    - <u>Sentence</u>: 5 years.

- <u>Count 7</u> - Using or carrying a firearm in relation to a drug trafficking crime on or about December 1, 1987 in violation of 18 U.S.C. §§ 924(c) & 2.

    - <u>Sentence</u>: 5 years.

- <u>Count 8</u> - Distribution of powder cocaine on December 1, 1987 in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2.

    - <u>Sentence</u>: 5 years.

- <u>Count 11</u> - Using or carrying a firearm in relation to a drug trafficking crime on or about February 22, 1988 in violation of 18 U.S.C. §§ 924(c) & 2.

    - <u>Sentence</u>: 5 years.

- <u>Count 12</u> - Distribution of powder cocaine between July 1, 1988 and July 27, 1988  in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2.

    - <u>Sentence</u>: 5 years.

- <u>Count 16</u> - Using or carrying a firearm in relation to a drug trafficking crime on September 2, 1988 in violation of 18 U.S.C. §§ 924(c) & 2.

    - <u>Sentence</u>: 5 years.

- <u>Count 17</u> - Assault with a dangerous weapon against Anthony Chung on September 2, 1988 in violation of 22 D.C. Code §§ 502 & 105.

    - <u>Sentence</u>: 3 to 9 years.

The Court ordered that sentences for Counts 1, 3, 4, 5, 8 and 12 run concurrently with the sentence imposed on Count 2 (LWOP), and that the sentences for Counts 6, 7, 11 and 16 (all § 924(c) violations) run consecutively to each other and to the sentence imposed on Count 2. In sum, Defendant was sentenced to LWOP plus twenty years. Mr. Palmer was also ordered to pay a special assessment fee of $1,050.

Mr. Palmer was acquitted on nine counts:

- <u>Count 9</u> - Possession with intent to distribute 50 grams or more of crack cocaine on December 19, 1987.

- <u>Count 10</u> – Using or carrying firearms on December 19, 1987 in relation to the drug trafficking offenses described in Counts 1 and 9.

- <u>Count 13</u> - Assault with a dangerous weapon against Brenda M. in September, 1988;

- <u>Count 14</u> - Using or carrying a firearm on September 1, 1988 in relation to the drug trafficking offense described in Count 1;

- <u>Count 18</u> - Possession with intent to distribute crack cocaine on October 28, 1988<u>;</u>

- <u>Count 19</u> - Using or carrying a firearm on October 28, 1988 in relation to the drug trafficking offenses described in Counts 1 and 18;

- <u>Count 20</u> - Distribution of 50 grams or more of crack on January 9, 1989;

- <u>Count 21</u> - Using or carrying firearms on January 8, 1989 in relation to the drug trafficking offenses described in Counts 1 and 20; and

- <u>Count 23</u> - Receipt and possession of an unregistered machine gun on January 9, 1989.

The two remaining Counts, 15 and 22, named Mr. Palmer's co-defendants only. Mr. Palmer appealed his conviction and the D.C. Circuit affirmed. <u>See</u> <u>United States v. Harris</u>, 959 F.2d 246 (D.C. Cir.), <u>cert. denied</u>, 506 U.S. 933 (1992).

### B.  Procedural History

Since his conviction was affirmed on appeal, Mr. Palmer has submitted many post-conviction filings pursuant to § 2255 seeking to vacate, set aside or correct his sentence. This Section briefly reviews the history of those filings.

On September 15, 1995, Mr. Palmer filed a pro se Motion for New Trial [Based on] Newly Discovered Evidence, relying on Rule 33 of the Federal Rules of Criminal Procedure and "USCA title 18." [47]. The Court denied the motion on December 5, 1995. [48]. Mr. Palmer appealed and the D.C. Circuit affirmed the denial, expressly construing Palmer's "Motion for New Trial" as a Motion to Vacate under § 2255. United States v. Palmer, 97 F.3d 593 (D.C. Cir. 1996).

On April 22, 1996, the Federal Public Defender filed a Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255, asserting a single issue: Mr. Palmer's convictions under § 924(c) must be vacated under Bailey v. United States, 516 U.S. 137 (1995). [59]. On July 8, 1996, Mr. Palmer moved pro se to dismiss this motion, arguing that it was filed without his knowledge or consent. [73]. He did so in order to avoid being barred from raising additional issues in his own motion to vacate, which could have been barred as "successive" after the FPD's motion. Later, with both motions still pending, Mr. Palmer apparently changed his mind about the FPD motion, and on April 8, 1997, Mr. Palmer filed pro se a Motion to Amend, seeking to adopt the FPD's Bailey claim. [88]. On the same date, Mr. Palmer also filed his own Motion to Vacate under § 2255, adding numerous issues to the single Bailey issue raised by counsel in its previous motion. [89].

On June 2, 1997, the Court granted Palmer's initial motion to dismiss FPD's Motion to Vacate based on Bailey. [104]. The Court also denied two additional claims Palmer had raised in

his April 8 Motion to Vacate, and directed the government to respond to his remaining claims. Id. On June 12, 1997, the government filed a response, asserting that because the D.C. Circuit had construed Palmer's initial 1995 post-conviction motion as a Motion to Vacate under § 2255, the April 8, 1997 Motion was barred as a successive motion under the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA). [109]. Palmer filed a Response on June 23, 1997 [111], a Supplemental Reply on July 22, 1997 [119], a Second Supplemental Reply on August 8, 1997, [123] and an additional Supplement and Amendment on October 29, 1998. [170]. The government filed another brief in opposition on March 24, 1999, reiterating that Palmer's Motion was barred as a successive motion, claiming that Palmer's claims were in any event procedurally barred since he had failed to raise them on direct appeal, and also attacking his claims on their merits. [174]. Palmer filed a Reply on August 24, 1999. [185].

On December 30, 1999, the district court dismissed Palmer's § 2255 claims as successive. [188]. Palmer appealed. See Brief for Appellant, United States v. Palmer, 2001 WL 36040241, (D.C. Cir. Brief filed June 18, 2001). On June 18, 2001, while his appeal was pending, Palmer filed an additional § 2255 motion in the district court. [198]. On July 19, 2002, the D.C. Circuit reversed the District Court's December 1999 dismissal of Palmer's claims as successive and remanded. See United States v. Palmer, 296 F.3d 1135 (D.C. Cir. 2002).

On remand from the D.C. Circuit, the district court issued an order [216] on September 10, 2003 dismissing without prejudice defendant's pending § 2255 motions – those filed on April 8, 1997 [89], October 29, 1998 [170], June 18, 2001 [198] – and ordered him to file a consolidated motion that "incorporate[d] only those arguments set forth in" those motions, replies, and supplements he filed on April 8, 1997 [89], October 29, 1998 [170], August 24, 1999 [185], and June 18, 2001 [198].

Mr. Palmer then filed a new Motion to Vacate on June 24, 2004 which was in part pro se and in part through FPD as counsel. [230]. He subsequently filed a pro se motion to amend on November 19, 2004, [244], and counsel filed an additional Motion to Amend on November 21, 2005. [273]. The government filed its Response to the Amended Motion on December 5, 2005. [276].

On August 6, 2007, the Court granted petitioner's motion to hold his case in abeyance pending the Supreme Court's resolution of Kimbrough v. United States, 552 U.S. 85 (2007). [288]. After that case was decided, on March 26, 2008, the Court lifted the stay. [299] On June 18, 2008, Mr. Palmer filed his Reply to the government's opposition in part pro se and in part through counsel FPD. [303].

Nearly two years later, with no decision on his case, Mr. Palmer again moved the Court to stay the proceedings pending legislation and amendment to the Sentencing Guidelines. [328]. On April 7, 2010, the Court issued an ordered staying the case. [329]. Subsequently, Congress passed the Fair Sentencing Act of 2010, and the Sentencing Guidelines were amended.

On August 25, 2011, the parties filed a Joint Status Report in which they agreed that "given the size of the underlying record, the number of issues pending before the Court, and the amount of time that has elapsed since briefing was completed in this case, the parties would like to submit updated briefing to assist the Court in resolving the issues." [334] at 3. The Court granted this request to file updated briefings on August 25, 2011. [335].

On March 20, 2012 Mr. Palmer filed an Updated Motion to Vacate under § 2255, pro se and through counsel, claiming his case shows an "extreme malfunction of the criminal justice system." Petitioner's Updated Motion to Vacate, [378], at 83. On April 25, 2012, the case was reassigned from Judge Urbina upon his retirement from the bench. The government filed a

Response to the Updated Motion on August 21, 2012 [391] in which they expressly incorporated their previous response, filed December 5, 2005. [276].

Under the July 25 Order, Mr. Palmer had been given until September 15, 2012[2] to file a Reply. See Order, July 25, 2012 [388]. On September 12, Mr. Palmer filed a Motion requesting additional time. [394].

Mr. Palmer's motion to yet again extend time will be DENIED and his 15 year old motion will be decided now, without further repetitive briefing.

**C.  Summary of Petitioner's Claims Now Pending**

Petitioner's March 20, 2012 Updated Motion was intended to consolidate his arguments and therefore supersedes Petitioner's previous filings. See Joint Status Report, Aug. 25, 2011 [334]. Only the claims presented therein shall be considered pending before the Court, and all other arguments raised in previous motions and not repeated here shall be considered abandoned.

The Updated Motion advances the following twelve claims:

**Claim 1: Ineffective Assistance of Counsel**. Through counsel, Petitioner claims his trial counsel, Mr. Mundy, was ineffective for actions in pre-trial, trial, and sentencing. See Petitioner's Updated Motion at 21 ff. Petitioner alleges his counsel was ineffective before trial because he (a) failed to investigate witnesses who could have provided an affirmative defense, especially Michael McGeachy, id. at 30; (b) did not adequately investigate the government's case, especially with respect to their allegations regarding his purchase of guns through Raymond Morant, id. at 26-30; (c) did not investigate government witnesses, especially Anthony Watson and Damien Scott to discover impeaching evidence, id. at 28-29; and (d) did not adequately confer with Petitioner about possible defense witnesses, theory of the case, or

---

[2] In Mr. Palmer's Motion for a 60-Day Extension of Time, filed on September 12, 2012, [394] he gives himself an extra two days, misstating this deadline as September 17, 2012, before requesting an additional 60 days.

whether Petitioner would testify in his own defense, id. at 26. Petitioner alleges his counsel was ineffective during trial because he (e) did not call witnesses for the defense who could have rebutted the government's allegations, especially Michael McGeachy, id. at 32; (f) did not adequately confer with or share information with Petitioner, id. at 26-27; (g) did not adequately present Petitioner's defense – that he was an independent drug dealer, not a kingpin of a crack conspiracy, id. at 31; (h) did not point out legal deficiencies in the proof to the court or the jury, such as an apparent confusion between crack and powder cocaine in some of the allegations, id. at 30-31, 46-48; (i) prevented Petitioner from testifying in his own defense, id. at 33-35; (j) failed to request jury instructions that the final element of the CCE charge required showing that the conspiracy involved the requisite drug quantities (1500 grams of crack *and* 150,000 grams of powder cocaine) during the time that petitioner was manager, and may not use amounts that were involved in mere side deals not part of the conspiracy id. at 40-43 ; (k) failed to request jury instructions that would have explained to the jury how to analyze the case, including the proper method for determining whether petitioner actually committed a series of violations in concert with five other persons as required under the statute, id. at 38-39, 43-46. At sentencing, Petitioner alleges his counsel was deficient because he (l) failed to ask the sentencing court to make findings as to the scope of Petitioner's participation in the conspiracy, id. at 48-50; and (m) failed to object to the three-point adjustment under U.S.S.G. § 3A1.2, id. at 50-51.

In the pro se portion of the Updated Motion to Vacate, Petitioner adds that (n) counsel was ineffective because he failed argue that the government failed to prove that five co-defendants were convicted in connection with the counts that the jury found constituting the series of violations underlying the CCE conviction; and (o) was affected by a conflict of interest

because his fee was being paid by petitioner's wife, who was also facing potential charges, and who he may have felt an obligation to protect. Id. at 113.

Claim 2: **Booker.** Through counsel, Petitioner challenges the constitutionality of the mandatory sentence imposed based on the federal sentencing guidelines, relying on United States v. Booker, 543 U.S. 220 (2005). Petitioner's Updated Motion at 51-52. Petitioner also argues that the holding of Kimbrough v. United States, 128 U.S. 558 (2008), new sentencing guidelines, and recent statutory changes affecting the ratio between crack and powder cocaine sentencing should be applied in his case. Petitioner's Updated Motion at 51-52. Petitioner seeks a new sentencing hearing where he might argue for a reduced sentence under these new legal developments.

Claim 3: **Rutledge**.  Through counsel, petitioner asserts that his conviction and sentence for CCE (Count 2) should be vacated pursuant to Rutledge v. United States, 517 U.S. 292, 300 (1996). Petitioner's Updated Motion at 52-56.

Petitioner reiterates the Rutledge claim in the pro se portion of the brief, where he also requests a new trial on the conspiracy charge. See id. at 77.

Claim 4: **Anderson**. Through counsel, Petitioner argues that four out of his five convictions for violations of 18 U.S.C. § 924 must be vacated under United States v. Anderson, 59 F.3d 1323, 1334 (D.C. Cir. 1995) (en banc).  Petitioner's Updated Motion at 56-58.

Claim 5: **Bailey.** Through counsel, Petitioner argues that his fifth conviction for violation of 18 U.S.C. § 924 must be vacated because the jury instructions defined the term "use" more liberally than the term has been construed by the Supreme Court in Bailey v. United States, 516 U.S. 137 (1995). Petitioner's Updated Motion at 58-61.

**Claim 6**: **"Side Deals."** In the pro se portion of the Updated Motion, Petitioner claims the Court and jury attributed drug quantities to defendant when they were actually part of side deals by the co-conspirators or by uncharged persons. See, e.g., id. at 93.

**Claim 7: Jury Instructions**. In the pro se portion of the Updated Motion, the Petitioner claims that (a) the jury instructions did not adequately instruct the jury on how to properly determine drug types, quantities and attribution of drug amounts to defendant, id. at 101; (b) failed to adequately instruct on the government's burden of proof, see, e.g., id. at 92-93; (c) failed to require the jury to state in its verdict with sufficient particularity the details and evidentiary basis for all components and aspects of a conspiracy or CCE, id. at 104; and (d) Petitioner also argues that, at the time of the 1989 trial, drug quantity should have been treated as a sentencing factor to be determined by the judge, not the jury, id. at 78.

**Claim 8: Eighth Amendment**. In the pro se portion of the Updated Motion, Petitioner asserts that the sentence of LWOP under Count 2, and of life under Count 1 both violate the Eighth Amendment. Id. at 79, 97-98, 127.

**Claim 9: "Actual Innocence."** In the pro se portion of the Updated Motion, Petitioner asserts that he is actually innocent of the § 848(b) CCE count because the jury did not properly and specifically determine the drug types (cocaine powder or crack), amounts, and attribution to defendant. see id. at 101 ff.

**Claim 10: Insufficiency of Evidence.** Petitioner contends that government's case was inadequate to convict because its witnesses were biased and their testimony was inconclusive and inconsistent, see e.g., id. at 110-12, 117-120.

**Claim 11: Factual Inaccuracies in the PSR**. Petitioner claims the presentence investigation report ("PSR") and the Court incorrectly attributed certain drug types and amounts to defendant and thus his CCE conviction is unconstitutional. See, e.g., id. at 82

**Claim 12: Conspirator Liability.** Petitioner claims that the court erred by relying on "reasonable foreseeability" as the proper legal standard for conspirator liability. Id. at 93, 96

Petitioner requests an evidentiary hearing to resolve these issues. Id. at 61.

### III. Analysis

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Relief under § 2255 is an extraordinary remedy in light of society's legitimate interest in the finality of judgments. United States v. Zakas, 793 F. Supp. 2d 77, 79-80 (D.D.C. 2011). Indeed, "[t]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon." § 2255(b). The defendant carries the burden of sustaining his contentions by a preponderance of evidence. United States v. Simpson, 475 F.2d 934, 935 (D.C. Cir. 1973).

The government concedes, in whole or in part, two of Mr. Palmer's claims. The rest of his claims all fail. Several are time-barred, others are procedurally barred, and the remainder fail on the merits.

**A. Two of Defendant's Claims Are Wholly or Partially Conceded by the United States**

The United States concedes two of defendant's claims should be granted in whole or in part.

First, the United States concedes petitioner's <u>Anderson</u> claim (Claim 4) in whole. In that case, the D.C. Circuit held that one underlying drug trafficking crime cannot be the predicate for more than one § 924(c) conviction. <u>United States v. Anderson</u>, 59 F.3d 1323, 1334 (D.C. Cir. 1995) (en banc). Accordingly, as respondent concedes, four of petitioner's five convictions for 18 U.S.C. § 924 must be vacated.

The motion to vacate Mr. Palmer's conviction and sentence under Counts 6, 7, 11, and 16 is hereby GRANTED.

Second, the United States concedes petitioner's <u>Rutledge</u> claim (Claim 3) in part. It agrees with petitioner that, under the authority of that decision, petitioner's convictions for both conspiracy (Count 1) and CCE (Count 2) cannot both stand where the conspiracy was itself a lesser included offense in the CCE conviction. However, the government and Mr. Palmer disagree about which of the two convictions should be vacated.

Petitioner argues, through counsel, that the more serious CCE conviction should be vacated – and with it, Palmer's sentence of LWOP. He argues that where, as here, "the lesser included offense (conspiracy) was <u>the predicate</u> for the greater offense (CCE), it is the greater offense that should be vacated." Petitioner's Updated Motion at 52. Petitioner reasons that because the conspiracy conviction formed a necessary predicate offense for the CCE conviction,

"[i]f the conspiracy charge was vacated, the structure upon which the CCE was built collapses."

Id.

The United States argues that the less serious conspiracy charge should be vacated, along with the sentence of life, thereby leaving in place Petitioner's sentence of LWOP. The government's strongest case in support of this position appears to be United States v. Brito, in which the Fifth Circuit held it "well settled" that in Rutledge cases, the lesser included offense of conspiracy should be dismissed and the CCE conviction should be left to stand. 136 F.3d 397, 408 (5th Cir. 1998) (citing Fifth Circuit caselaw). Similarly, in United States v. Little, the Fourth Circuit interpreted Rutledge as mandating that "the remedy in such cases is to vacate the conspiracy conviction and any sentence attributed to that conviction." 392 F.3d 671, 678 (4th Cir. 2004).

Contrary to the Fourth Circuit's assertion in Little, the Supreme Court's Rutledge opinion appears to actually leave this question open: the Court held that "one of . . . [the two] convictions, as well as its concurrent sentence . . . must be vacated," but remanded the case to allow the lower court to determine which of the two convictions to vacate. 517 U.S. at 307. Similarly, the government's other cases do provide numerous examples of courts following the practice of vacating the lesser included offense rather than the greater one, but none lend explicit support to the claim that this choice is legally required. See United States v. Hoyle, 122 F.3d 48, 49 n.1 (D.C. Cir. 1997) (vacating defendant's lesser included offense of conspiracy to avoid double punishment and retaining the conviction on CCE); see also United States v. Little, 392 F.3d 671, 678 (4th Cir. 2004) (same); Lanier v. United States, 220 F.3d 833, 841 (7th Cir. 2000) (holding that a district court did not abuse its discretion in proceeding in this fashion); United States v. Wilson, 135 F.3d 291, 303 (4th Cir. 1998) (vacating defendant's lesser included offense

of conspiracy to avoid double punishment and retaining the conviction on CCE); <u>United States v. Miller</u>, 116 F.3d 641, 677 (2d. Cir. 1997) (same); <u>United States v. Roasrio</u>, 111 F.3d 293, 301 (2d Cir. 1993) (same). Thus, while the usual practice is to dismiss the lesser included offense, the matter ultimately seems to be one left to the sound discretion of the Court, rather than legally mandated.

Moreover, the present case poses a higher-stakes choice of which conviction to vacate than some of the cases cited by the government because of the distinct sentences attached to the two convictions. Mr. Palmer was sentenced to life imprisonment for conspiracy, and LWOP for CCE. Because some of Mr. Palmer's criminal conduct occurred before the abolition of federal parole in 1987, Palmer would be eligible for parole if his LWOP sentence were vacated. The choice to vacate one conviction or the other is likely to have more concrete effects on Mr. Palmer's actual sentence than cases in which the two sentences were identical. <u>Cf., e.g.</u>, <u>Wilson</u>, 135 F.3d at 296 (vacating conspiracy conviction where defendant was "sentenced to concurrent life terms on the conspiracy and CCE convictions").

The Court notes Petitioner's assertion, made through counsel, that "Michael Palmer merits relief" because he "has fought hard to develop the best in himself" since being incarcerated, and "has become a guiding light for others." Petitioner's Updated Motion at 61. The Court also appreciates the letters, certificates and other documents attached that attest to Mr. Palmer's productivity and progress over the last decades, as well as FPD counsel's own personal attestations on behalf of Mr. Palmer's reformed character. <u>Id.</u> at 62-63.

Nonetheless, this Court will not depart from standard practice in this case. It will deny Mr. Palmer's request to vacate the CCE conviction instead of the conspiracy conviction (Count 1) and associated sentence.

Mr. Palmer's conviction under Count 1 for conspiracy to distribute is hereby VACATED.

**B. Several of Petitioner's Claims Are Time-Barred**

Before turning to the merits of defendant's remaining claims, the Court must first determine whether those claims are timely under § 2255. The Court concludes that several of Mr. Palmer's claims are time-barred.

*i.      § 2255's One-Year Time-Limit*

 "In enacting AEDPA in 1996, Congress imposed for the first time a fixed time limit for collateral attacks in federal court on a judgment of conviction." Mayle v. Felix, 545 U.S. 644, 654 (2005); see also id. at 662 (explaining that "Congress enacted AEDPA to advance the finality of criminal convictions"). Section 2255 has a one-year limitation period, which runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from making a motion by such government action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

A conviction becomes final when the Supreme Court "affirms [the] conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." Clay v. United States, 537 U.S. 522, 527 (2003).

Here, the Petitioner's conviction became final on October 13, 1992, when, after the D.C. Circuit affirmed his conviction on direct appeal, the Supreme Court denied his petition for a writ of certiorari. United States v. Harris, 959 F.2d 246 (D.C. Cir.), cert. denied sub. nom. Palmer v. United States, 541 U.S. 1018 (1992). This date falls several years before the enactment of AEDPA on April 24, 1996. "[A] prisoner whose conviction became final before the AEDPA was enacted has a one year grace period from the date of enactment in which to file a motion under § 2255." Cicero, 214 F.3d at 202. Accordingly, Palmer had until April 24, 1997 to file his § 2255 motion.

On April 8, 1997, Palmer filed a pro se § 2255 motion. [89]. This motion was filed before the April 24, 1997 deadline and was therefore timely. The remainder of Mr. Palmer's § 2255 filings, including the Updated Motion now pending before this Court [377, 378], were all filed after the statutory deadline of April 24, 1997. The claims raised in these motions are therefore time-barred unless they either "relate back" to claims that were timely raised in the April 8, 1997 Motion, or arise from retroactively applicable rights recognized by the Supreme Court at a later date, or later-discovered evidence that could not have been discovered through due diligence. See § 2255 (f).

   ii.     Relation Back Under FRCP 15 & § 2255

Rule 15(c) of the Federal Rules of Civil Procedure prescribes how section 2255 pleadings can be amended under the relation back doctrine. An amendment relates back when the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading. Id. at 383; Fed. R. Civ. P. 15(c)(2).[3] In the habeas context, a claim will be

_____

[3] By treating the court-sanctioned "Updated Motion" here as an amendment to a prior timely pleading under Fed. R. Civ. P. 15 (c) for purposes of relation-back analysis, this court follows the example of other courts who "apply the principles of 15(c) to supplemental pleadings." See United States v. Hicks, 283 F.3d 380, 385 (D.C. Cir. 2002) (citing FDIC v. Knostman, 966 F.2d

considered timely only if they "arise from the same core facts as the timely filed claims, and not [if] the new claims depend on events separate in 'both time and type' from the originally raised episodes." Mayle v. Felix, 545 U.S. 644, 657 (2005).  New claims will "not relate back (and thereby escape AEDPA's one-year time limit) [if they] assert[] a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 650; See also Casseday v. United States, 723 F. Supp. 2d 137, 156 (D.D.C. 2010) (explaining that "[a]lthough Felix involved the statute of limitations governing federal habeas corpus petitions filed by state prisoners under 28 U.S.C. § 2254 [not § 2255, which is at issue here], the federal courts have construed these statutes of limitations harmoniously") (citing Clay, 537 U.S. at 529–32; United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000))."[W]hile amendments that expand upon or clarify facts previously alleged will typically relate back, those that significantly alter the nature of a proceeding by injecting new and unanticipated claims are treated far more cautiously." Hicks, 283 F.3d at 388.

###### iii.    Claims Raised in Petitioner's Timely 1997 Motion

Mr. Palmer's sole timely Motion, filed on April 8, 1997 [89], raised the following eleven claims:

**Claim A: Ineffective Assistance of Counsel**. Petitioner claimed that his trial attorney, Mr. Mundy, was ineffective because he (i) conceded defendant's guilt in closing argument; (ii) did not call Michael McGeachy as a witness; (iii) did not properly investigate or impeach the testimony of Anthony Watson or Damien Scott; and (iv) did not call Raymond Morant as a witness.

---

1133, 1138-39 (7th Cir. 1992); Davis v. Piper Aircraft Corp., 615 F.2d 606, 609 n.3 (4th Cir. 1980)).

**Claim B: <u>Brady</u>/<u>Giglio</u>.** Petitioner claimed that the government violated its disclosure obligations by failing disclose that: (i) a government witness, Anthony Watson, perjured himself by, among other things, testifying about a crack transaction that occurred in the bathroom of a Chinese restaurant in New York when the government knew or should have known that restaurant lacked a bathroom; and (ii) Raymond Morant was an agent of the New York City Housing Authority Task Force and thus legally purchased guns in Pennsylvania.

**Claim C: Insufficiency of the Evidence.** Petitioner claimed that the government's evidence did not support his convictions because a government witness lied.

**Claim D: Insufficiency of the Evidence.** Petitioner claimed that the evidence did not support his conspiracy and CCE convictions (Counts 1-3) because the government improperly attributed the overt acts of his co-conspirators to support those convictions.

**Claim E: <u>Rutledge</u>.** Petitioner requested a new trial because the jury instructions violated Double Jeopardy because they required the jury to convict defendant of CCE after a conviction for conspiracy, citing <u>Rutledge v. United States</u>, 517 U.S. 292 (1996).

**Claim F: Eighth Amendment.** Petitioner claimed that a sentence of LWOP for a first time major drug offender violated the Eighth Amendment.

**Claim G: Sentencing Guidelines**. Petitioner claimed that the Sentencing Commission exceeded its authority when it promulgated U.S.S.G. § 2D1.1(a)(2).

**Claim H: Equal Protection.** Petitioner claimed that the Equal Protection clause is violated by the disparate sentences imposed for cocaine and crack.

**Claim I: Jury Instructions.** Petitioner argued that his convictions for conspiracy (Counts 1 and 3), and CCE (Count 2) should be vacated because (i) the jury did not specifically

resolve the object of these conspiracies; and (ii) the Court failed to provide a special verdict form or special interrogatory on Counts 1 and 2.

**Claim J: Bailey.** Petitioner claimed that his § 924(c) convictions must be vacated in light of Bailey.

**Claim K: Multiplicity of Indictment**. Petitioner argued that the indictment was itself defective on account of multiplicity.

        *iv.*    *Relation-Back Analysis of Petitioner's Pending Claims*

Claims 1-12 listed above that are pending before this court as raised in Petitioner's Updated Motion are time-barred unless they "arise from the same core facts" as one of these claims other than 1(d) and 11. See Felix, 545 U.S. at 657. This Section analyzes each claim in turn.

**Claim 1**, based on the ineffectiveness of petitioner's trial counsel, and relying on a host of theories, is time-barred in part and not time-barred in part.

Petitioner argues that all of the new claims related to ineffective assistance of counsel claims merely "'expand upon' facts previously alleged" in the timely motion because they are based on the same legal theory – ineffective assistance of counsel. See Petitioner's Updated Motion at 12 n.4. The United States contests that these claims rely on different core facts than those alleged in the initial timely filing, and so the fact that they share a common legal theory with those earlier claims does not allow them to relate back under Rule 15(c). This Court agrees with the government.

New and distinct factual theories raised in an untimely motion after a timely-filed ineffective assistance of counsel claim do not qualify for relation back under Rule 15(c) in the §

2255 context. In <u>Felix</u>, the Supreme Court rejected a broad interpretation of Rule 15(c) in the context of § 2255 that would have read the term "occurrence" as encompassing defendant's trial, conviction and sentencing, such that any claim that arose out of those events would relate back to a timely claim because under such a scheme "AEDPA's limitation period would have slim significance." 545 U.S. at 662; <u>see also</u> <u>Hicks</u>, 283 F.3d at 387 (noting that "[s]uch a result would be difficult to square with Congress' decision to expedite collateral attacks by placing stringent time restrictions on § 2255 motions."). The same reasoning leads this court to reject petitioner's proposed loose reading of the relation back rule. Allowing a petitioner to avoid AEDPA's time-bar for claims based on entirely different factual evidence and theories, linked only by a common generalized legal theory to a timely claim would undermine AEDPA's goal of finality in convictions. See <u>Felix</u>, 545 U.S. at 662.

A similar question was presented in <u>Smith v. United States</u>, 522 F. Supp. 2d 233, 237 (D.D.C. 2007). In that case,  petitioner filed a timely § 2255 motion asserting, inter alia, his trial counsel's ineffectiveness. He subsequently filed an untimely amendment, claiming "additional improprieties by . . . his trial counsel." <u>Id.</u> at  235. The court held that this did not qualify for relation back "because petitioner's motion to amend advances entirely new legal theories that arise from different sets of facts and types of conduct than his initial motion." <u>Id.</u> at 237. Other circuits have ruled similarly in these cases. See <u>United States v. Ciampi</u>, 419 F.3d 20, 24 (1st Cir. 2005) (holding that a petitioner "does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."); <u>Davenport v. United States</u>, 217 F.3d 1341, 1346 (11th Cir. 2000) (holding that untimely claims of ineffectiveness did not relate back to the timely claims of ineffectiveness

where the new claims were based on unrelated and distinct actions and events); <u>United States v. Craycraft</u>, 167 F.3d 451, 457 (8th Cir. 1999) ("[I]f the ineffective conduct alleged by [the defendant] in his first petition cannot be said to have arisen out of the same set of facts as his amended claim, his amendment cannot relate back and his claim must be time-barred since it was filed after the statutory period of limitation.").

Under this theory, most of petitioner's IAC claims are time-barred. Petitioner's claims based on his counsel's failure to call Michael McGeachy as a witness (Claim 1(e)) and failure to investigate or impeach the testimony of government witnesses Anthony Watson or Damien Scott (Claim 1(c)) are not time-barred because they relate back to petitioner's Claims A(ii) and (iii) raised in his timely April 8, 1997 motion. In contrast, Petitioner's claims 1(a), (b), (d), (f), (g), (h), (i), (j), (k), (l), (m), (n), and (o) are time-barred do not relate back to any claims raised in his timely motion.

**Claim 2**, based on the U.S. Supreme Court's decision in <u>Booker</u> holding the mandatory Federal Sentencing Guidelines unconstitutional, is not time-barred because petitioner challenged the legality of the sentencing guidelines in his timely April 8, 1997 motion (Claim G).

**Claim 5**, based on the U.S. Supreme Court's decision in <u>Bailey</u>, is not time-barred because petitioner raised this claim in his timely April 8, 1997 motion. (Claim J).

**Claim 6**, that the Court mistakenly allowed the jury to attribute quantities of drugs that were part of unrelated "side-deals" made by co-conspirators or other parties to the petitioner, is time-barred because it does not relate back to any claim raised in petitioner's timely April 8, 1997 motion. .

**Claim 7**, based on the alleged inadequacy of the jury instructions, is time-barred in part, and not time-barred in part. Claim 7(c), that the instructions failed to require the jury to state its

verdict as to conspiracy and CCE with sufficient particularity the details and evidentiary basis for all components and aspects of a conspiracy or CCE, is not time-barred because it relates back to the jury instructions claim (Claim I) raised in petitioner's timely April 8, 1997 motion. In contrast, Claims 7(a), (b) and (d) are time-barred because they do not relate back to any claim raised in petitioner's timely motion.

**Claim 8**, that petitioner's sentence of LWOP violates the Eighth Amendment, is not time-barred because it relates back to the petitioner's Eighth Amendment claim (Claim F) in his timely April 8, 1997 motion.

**Claim 9**, that petitioner is "actually innocent" of certain drug offenses, is time-barred because it does not relate back to any claims raised in petitioner's timely April 8, 1997 motion.

**Claim 10**, that the evidence was insufficient to convict, is not time-barred because it relates back to petitioner's insufficiency of evidence claim (Claim C) raised in his timely April 8, 1997 motion.

**Claim 11**, based on alleged factual inaccuracies in the PSR, is time-barred because it does not relate back to any claim in the timely motion.

**Claim 12**, based on the allegedly erroneous use of the "reasonable foreseeability" standard as the proper legal standard for conspirator liability, is time-barred because it does not relate back to any claim in the timely motion.

Petitioner's claims 1(a)-(b), 1(d), 1(f)-(n), 6, 7(a)-(b), 7(d), 9, 10(b), 11, and 12 are time-barred and DISMISSED. Petitioner's claims 1(c), 1(e), 2, 5, 7(c), 8, and 10(a) are not time-barred.

### D. Several of Petitioner's Non-Time-Barred Claims Are Procedurally Defaulted

i.     *Legal Standard for Procedural Defaults*

There are two forms of procedural default relevant to Mr. Palmer's remaining claims.

First, claims that were already raised and rejected on direct appellate review will not be entertained on a § 2255 motion absent extraordinary circumstances such as an intervening change in the law. United States v. Greene, 834 F.2d 1067, 1070 (D.C. Cir. 1987).

Second, with the exception of ineffective assistance of counsel (IAC) claims, claims that were not raised on direct review will only be entertained on a § 2255 motion if the petitioner can demonstrate "cause" and "actual prejudice" or that he is "actually innocent." Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Pettigrew, 346 F.3d 1139, 1144 (D.C. Cir. 2003). Cause may be shown where a claim is so novel that its legal basis is not reasonably available to counsel. Bousley, 523 U.S. at 622. Ineffective assistance of appellate counsel may also constitute cause. Murray v. Carrier, 477 U.S. 478 (1986). To establish "actual prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170; Pettigrew, 346 F.3d at 1144. Ineffective assistance of trial counsel claims are not subject to this cause and prejudice requirement under § 2255 and may be advanced "whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003).

ii.   *Claims Raised By Petitioner on Direct Appeal*

Petitioner raised the following twelve claims on his direct appeal, which was resolved at United States v. Harris, 959 F.2d 246 (D.C. Cir. 1992).

**Claim I.** The indictment was defective on multiplicity grounds because Counts 1 and 3 were substantially identical and there was only one alleged conspiracy. Id. at 250 (considering and rejecting this claim).

**Claim II.** The Court erred in instructing the jury that it could base a CCE conviction on a 21 U.S.C. § 846 conspiracy. Id. at 252-54 (considering and rejecting this claim).

**Claim III.** The Court should have required the jury to identify each of the five persons whom defendant organized or managed as a part of the CCE count based on the statute and the Sixth Amendment. Id. at 254-57 (considering and rejecting this claim on both statutory interpretation and Constitutional grounds).

**Claim IV**. The Court should have instructed the jury to consider only the quantity of drugs involved in the enterprise after the date that 21 U.S.C. § 841(b)(1)(B), which defines the drug amounts necessary to trigger a mandatory life sentence, allegedly became effective, which Palmer asserted was November 1, 1987. Id. at 257-58 (rejecting this claim because the section actually became effective on October 27, 1986).

**Claim V.** The Court erred in establishing defendant's base offense level by concluding that, for the purposes of setting the base offense level for the count 1 conspiracy conviction, the object of the conspiracy was the distribution of narcotics as opposed to defendant's CCE. Id. at 267 (rejecting this claim).

**Claim VI.** Defendant's conviction for a § 846 conspiracy is a lesser included offense of his CCE conviction and hence there is a violation of the Double Jeopardy Clause, Reply Brief of Appellant Michael Palmer at 4-6, United States v. Palmer, Case No. 89-3217 (D.C. Cir., filed Dec. 10, 1990);

**Claim VII**. Certain portions of the government's closing argument were impermissible, Joint Brief of Appellants, <u>United States v. Harris</u>, Case No. 89-3205 (D.C. Cir., filed Dec. 3, 1990);

**Claim VIII.** The Court erred in denying his motion for a continuance made on the first day of trial so that he could obtain new counsel, Appellee United States' Brief at 17 , <u>United States v. Harris</u>, Case No. 89-3205 (D.C. Cir., filed Oct. 30, 1990);

**Claim IX.** The Court improperly restricted cross-examination by not permitting the introduction of evidence regarding the penalties to which defendant and his codefendants were subject if convicted, Joint Brief of Appellants at 18;

**Claim X.** The Court erred in failing to give a lesser-included-offense instruction on the CCE count, Reply Brief at 4-6;

**Claim XI.** The Sentencing Guidelines violate due process, Joint Brief at 40-43; and

**Claim XII**. The Court erred in failing to make findings regarding his claims of inaccuracies in the presentence investigation report. Appellee's Brief at 72.

*iii.     Analysis of Procedural Default*

This part examines each of Petitioner's claims that were neither conceded by the government, nor time-barred, and excepting the IAC claims (which are not subject to the procedural default). The Court concludes that several of petitioner's claims are procedurally barred and must be dismissed.

**Claim 2**, a challenge to the constitutionality of the mandatory sentencing guidelines, based on <u>Booker</u> and <u>Kimbrough</u>, was (roughly speaking) raised and rejected on direct appeal in Mr. Palmer's claim XI. Accordingly, because the appellate court heard and rejected this claim,

Mr. Palmer must show an intervening change in the law in order to justify re-raising the claim on collateral review. See Greene, 834 F.2d at 1070. Here, the Supreme Court in Booker struck down the mandatory guidelines as unconstitutional after Palmer's direct appeal, amounting to a substantial change in the law. 543 U.S. 220. Thus, petitioner is not procedurally barred from pressing this claim here.

**Claim 5**, based on Bailey, was not raised on direct appeal. Therefore, petitioner must show cause and prejudice in order to avoid procedural default on this claim. Palmer attempts to satisfy the cause requirement by arguing that Bailey was not decided until 1995 – several years after his direct appeal. Petitioner's Updated Motion at 58-61. However, this argument has been considered and rejected by the Supreme Court. Bousley, 523 U.S. at 623. This claim is procedurally defaulted.

**Claim 6**, asserting that the jury and the court inappropriately attributed drug quantities to defendant when they were actually part of side deals by the co-conspirators or uncharged persons, was not raised on direct appeal. Petitioner does not show cause or prejudice for this claim and so it is procedurally defaulted, and thus DISMISSED.

**Claim 7(c)**, asserting that the jury instructions failed to require the jury to state its verdict with sufficient particularity for all components and aspects of the CCE and conspiracy convictions, was not raised on direct appeal. Petitioner does not show cause and prejudice for this claim, which is procedurally defaulted and DISMISSED.

**Claim 8**, based on the Eighth Amendment, was not raised on direct appeal. Petitioner does not show cause and prejudice for failing to litigate this claim on appeal. This claim is procedurally defaulted, and accordingly DISMISSED.[4]

**Claim 10(a),** asserting that the evidence was inadequate to convict because the witnesses were biased and their testimony inconclusive and inconsistent, was not raised on direct appeal. Petitioner does not show cause and prejudice for failing to litigate this claim on appeal. This claim is procedurally defaulted, and accordingly DISMISSED.

In sum, all but one of Petitioner's timely claims (other than his IAC claims) are procedurally defaulted and DISMISSED. Petitioner's IAC claims, along with his remaining Claim 5 are examined in the following section.

### E. All of Petitioner's Remaining Claims Fail on the Merits

*i. Claim 1(c) & (e): Ineffective Assistance of Counsel Claims Fail Because Petitioner Has Not Demonstrated Prejudice*

To prevail on a claim of ineffective assistance of counsel, a defendant must establish (1) that counsel's performance was deficient—that is, that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) that counsel's "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish that counsel's performance was deficient, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. The defendant must overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." Id. at 689. To establish that counsel's deficient performance prejudiced the defense, the defendant must show that "there is a reasonable

---

[4] As the government points out, even if this claim were not procedurally defaulted, it would fail on the merits. See Harmelin v. Michigan, 501 U.S. 957, 994-95 (1991) (state sentence of mandatory life imprisonment without parole in drug case did not violate Eighth Amendment).

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

Here, petitioner's non-time-barred claims -- 1(c) & 1(e) – assert that counsel did not investigate government witnesses to discover impeaching evidence, and did not call witnesses for the defense who could have rebutted the government's allegations. Specifically, petitioner points to government witness Anthony Watson, who testified that he received cocaine from Palmer in a restaurant bathroom. Had trial counsel investigated, petitioner suggests, he would have discovered that the restaurant had no bathroom, undermining Watson's credibility as a witness. Petitioner's Updated Motion to Vacate at 29-30. Petitioner also points to government witness Damien Scott, who testified he bought cocaine from codefendant Harris. Had trial counsel investigated Scott's background, he would have found that Scott lied in testimony during another case at the same time. Id. at 29-30. Finally, petitioner points to trial counsel's failure to call Michael McGeachy as a witness for the defense, who could have impeached Watson, and testified that he did not, in fact, work with Palmer, thereby undermining the government's alleged "series" of illegal acts for its CCE charge. Id. at 32.

This Court need not decide whether these failures fell below an "objective standard of reasonableness" because petitioner has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. As Judge Greene remarked in Palmer's sentencing hearing, ""[i]n the 25 years . . . that I have been on the bench, I have seldom, if ever, seen a case in which the evidence was as overwhelming as it was in this case . . . and particularly [as to] the guilt of Mr. Palmer." Transcript of Sentencing, at 7. Even if petitioner's trial counsel had pursued these lines

of inquiry in trial, petitioner has failed to demonstrate a "reasonable probability" that the outcome of the trial would have been different, in light of the "overwhelming" evidence against Mr. Palmer. Thus, petitioner's remaining IAC claims each fail on the merits and are DISMISSED.

       *ii.      Claim 2 Fails Because <u>Booker & Kimbrough</u> Do Not Apply Retroactively*

Petitioner's Claim 2, seeking to vacate his sentences on the grounds of <u>Booker</u> and <u>Kimbrough</u> must be rejected because those decisions do not apply retroactively. Both of these cases were decided after Mr. Palmer's conviction became final. Thus, these decisions may only support Mr. Palmer's collateral attack on his sentence if they apply retroactively. Under the framework established by the Supreme Court in <u>Teague v. Lane</u>, 489 U.S. 288 (1989) a decision is applicable retroactively if it "states a new rule that is (1) substantive or (2) a "watershed" procedural rule." <u>In re Fashina</u>, 486 F.3d 1300, 1303 (D.C. Cir. 2007) (citing <u>Teague</u>, 489 U.S. 288). Applying these principles, this Circuit has held that <u>Booker</u> is not retroactively applicable to cases on collateral review. <u>See</u> <u>United States v. Branham</u>, 515 F.3d 1268, 1278 (D.C. Cir. 2008) (citing <u>In re Fashina</u>, 486 F.3d 1300, 1306 (D.C. Cir. 2007)); <u>In re Zambrano</u>, 433 F.3d 886, 888 (D.C. Cir. 2006). Similarly, <u>Kimbrough</u>, which merely elaborates on <u>Booker</u>, likewise creates no new rules that are either "substantive" or "watershed procedural rules" within the meaning of <u>Teague</u> and thus, is also not retroactive.  <u>See</u> <u>United States v. Tchibassa</u>, 646 F. Supp. 2d 144, 149 (D.D.C. 2009).

Because neither <u>Booker</u> nor <u>Kimbrough</u> apply retroactively, petitioner cannot benefit from the rules they announced. Accordingly, petitioner's Claim 2 is DISMISSED.

**IV. Conclusion**

For the foregoing reasons, petitioner's Updated Motion to Vacate is granted in part and denied in part. A separate order consistent with this Opinion shall issue on this date.

Signed by Royce C. Lamberth, Chief Judge, on September 26, 2012.