UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MICHAEL PALMER,<br><br>      Defendant. | Case No. 89-CR-36-RCL-1 |

### MEMORANDUM OPINION & ORDER

### (FIRST STEP ACT)

    Defendant Michael Palmer seeks a reduced sentence pursuant to the First Step Act of 2018. Mot. for Reduced Sentence, ECF. No. 475. Palmer has served approximately thirty-one years of a life sentence without the possibility of parole. The United States disputes that Palmer is eligible for a reduced sentence under § 404 of the First Step Act and otherwise opposes his motion. For the following reasons, Palmer's motion will be denied.

**I.    BACKGROUND**

    This Court previously detailed the factual background of this case as the following:

> Mr. Palmer presided over a large-scale drug business which imported large amounts of cocaine from New York City and distributed it in Washington, D.C. in the late 1980s. At petitioner's sentencing hearing, Judge Harold Greene observed that Mr. Palmer's organization "created havoc and misery in their path" for several years[.] In addition to supplying "thousands of men, women and children with crack," the organization possessed "at least 27 guns, including a machine gun, submachine guns and sawed-off shotguns" that it used to "terrorize and intimidate peaceful citizens as well as rival gangs."

*United States v. Palmer,* 902 F. Supp. 2d at 4–5 (D.D.C. 2012) (internal citations omitted). In 1989, a jury found Palmer guilty on twelve counts, the most significant of which was running a Continuing Criminal Enterprise ("CCE") "that involved at least 1500 grams of cocaine base

1

between January 1987 and January 12, 1989 in violation of 21 U.S.C. § 848(b)." *United States v. Harris*, 959 F.2d at 249; *see also Palmer,* 902 F. Supp. 2d 1 at 5.

The Presentence Investigation Report ("PSR") estimated that Palmer's enterprise distributed more than 150 kilograms—or 150,000 grams—of crack cocaine. Opp'n 35, ECF No. 492. At Palmer's sentencing, the trial judge noted that Palmer's enterprise distributed an "estimated 100 and 200 kilos of crack into the city," for which they earned a total of "perhaps as much as 5 to $10 million." *Palmer,* 902 F. Supp. 2d at 4–5. Based on the verdict and evidence, the court imposed a mandatory life sentence without the possibility of parole for the CCE conviction, plus an additional 20 years for the other convictions. *Id*. at 5–6. The D.C. Circuit affirmed all twelve of Palmer's convictions on direct appeal. *Harris*, 959 F.2d at 252–57.

Palmer has spent over a decade filing various collateral attacks, often pro se. *See Palmer,* 902 F. Supp. 2d at 6–8. In 2012, this Court consolidated the claims and vacated five of Palmer's previous convictions due to intervening changes in the law on merger. *See Palmer*, 854 F.3d at 42; *Palmer,* 902 F. Supp. 2d at 12–19. In January 2015, this Court issued an Amended Judgment reflecting the vacated convictions but leaving Palmer's CCE conviction and life sentence without the possibility of parole unchanged. *See Palmer*, 854 F.3d at 43-44.

On January 31, 2019, Palmer filed a pro se motion seeking a sentence reduction pursuant to § 404 of the First Step Act. Mot. for Reduced Sentence, ECF. No. 475. On July 6, 2019, with the assistance of counsel, Palmer filed a supplemental motion. Suppl. Mot. for Reduced Sentence, ECF. No. 483. In both motions, Palmer asks this Court to reduce his sentence to time served and order his release. Mot. for Reduced Sentence 8, ECF. No. 475; Suppl. Mot. for Reduced Sentence 24, ECF. No. 480. On December 19, 2019, the government filed its opposition

to Palmer's motion. Opp'n, ECF No. 492. Palmer, through counsel, filed a reply on January 13, 2020. Reply, ECF No. 494.

According to the Bureau of Prisons, Palmer has thus far served approximately thirty-one years. Opp'n 36, ECF No. 492. Because Palmer has completed serving his other sentences, Palmer's First Step Act motions only concern the life sentence for his CCE conviction.

## II.   LEGAL STANDARD

Congress enacted the Fair Sentencing Act in 2010. 124 Stat. 2372. The Act reduced the statutory penalties for cocaine base offenses in order to alleviate sentencing disparities between crack and powder cocaine offenders. *See United States v. Peters*, 843 F.3d 572, 575 (4th Cir. 2016). Section 2 of the Act increased the threshold drug amounts required to trigger mandatory minimum sentences for crack cocaine offenses. 124 Stat. 2372 § 2. Before the Act, a CCE conviction involving 1.5 kilograms of crack cocaine triggered a mandatory life sentence. *See Harris*, 959 F.2d at 252. After the Act, the threshold quantity to trigger a mandatory life sentence increased to 8.4 kilograms of crack cocaine. 124 Stat. 2372 § 2.

Eight years later, Congress enacted the First Step Act. 132 Stat. 5194. Section 404 of the Act gives retroactive effect to sections 2 and 3 of the Fair Sentencing Act, and grants courts the discretion to reduce an eligible defendant's sentence. *Id.* § 404. Eligibility under the First Step Act is governed by § 404(a), which defines which offenses are covered. *Id.* § 404(a). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." *Id.* The following subsection authorizes a court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id.* § 404(b). Finally, § 404(c) imposes limitations and imparts

3

discretion on the court: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.* § 404(c).

### III. DISCUSSION

#### A. Palmer Is Not Eligible for Resentencing Under the First Step Act.

Palmer contends that this Court should exercise its discretion to reduce his sentence under § 404 of the First Step Act because (1) his CCE conviction involving crack cocaine is a covered offense, (2) the offense was committed prior to August 3, 2010, and (3) the statutory penalty for the conviction was modified by the Fair Sentencing Act. *See* Mot. for Reduced Sentence 1, ECF No. 475. A jury convicted Palmer of CCE involving at least 1.5 kilograms of crack cocaine between 1987 and 1989. *Palmer,* 902 F. Supp. 2d at 5. Palmer received a then-mandatory life sentence. *Harris*, 959 F.2d at 253. The threshold to trigger such a sentence has since increased from 1.5 to at least 8.4 kilograms. 124 Stat. 2372 § 2. Trial evidence established that Palmer's organization sold an "estimated 100 and 200 kilo[gram]s of crack," *Palmer*, 854 F.3d at 50 (quoting *Palmer,* 902 F. Supp. 2d at 4), even though Palmer still disputes that that he may be held responsible even for 1.5 kilograms. Mot. for Reduced Sentence 6–7, ECF No. 475. The sentencing court accepted the government's evidence and PSR remarking that "[i]n the 25 years . . . that I have been on the bench, I have seldom, if ever, seen a case in which the evidence was as overwhelming as it was in this case . . . and particularly [as to] the guilt of Mr. Palmer." *Palmer,* 902 F. Supp. 2d at 5.

Does § 404 apply to high-quantity defendants such as Palmer? This Court considered the same question in *United States v. Wells*, CR 01-253-RCL-3 (D.D.C. Mar. 5, 2020), and held that Congress did not intend for such high-quantity offenders to be eligible for relief under § 404.

4

This Court continues to follow the reasoning articulated in *Wells*, and accordingly reproduces much of the opinion's language below.

Federal courts are divided between competing interpretations of § 404(a) of the First Step Act. Which controls a defendant's eligibility: the drug quantity associated with the statute of conviction, or the actual quantity the defendant is held responsible for at sentencing? The dilemma has been well-illustrated by a hypothetical:

> A defendant charged in an indictment under Section 841(b)(1)(A)(iii) is convicted by a jury of a crack cocaine offense and sentenced before the Fair Sentencing Act. The jury checked a box on the verdict form indicating the defendant was responsible for 50 grams or more of crack cocaine, the highest quantity they were asked to consider. The defendant's presentence report, however, determined that the total amount of crack cocaine attributable to the defendant was 300 hundred [sic] grams. The defendant did not object to that quantity during sentencing. According to the government, the defendant in this hypothetical is not eligible for relief under the First Step Act because the uncontested amount found in the hypothetical presentence report, 300 grams, is enough to trigger the statutory penalty range under Section 841(b)(1)(A)(iii) even after the Fair Sentencing Act. The defense, however, would say this defendant is eligible because the Court may only look at to [sic] quantity as charged and found by the jury, and 50 grams of crack cocaine no longer triggers Section 841(b)(1)(A)(iii)'s penalty ranges after the Fair Sentencing Act.

*United States v. Boulding*, 379 F. Supp. 3d 646, 652 (W.D. Mich. 2019), *aff'd in relevant part*, Nos. 19-1590/1706, 2020 WL 2832110 (6th Cir. June 1, 2020).

Most courts to consider the issue have agreed with Palmer's "statute of conviction" interpretation. *See United States v. Johnson*, No. 19-874, 2020 WL 3023063 (2d Cir. June 5, 2020); *United States v. Boulding*, No. 1706, 2020 WL 2832110 (6th Cir. June 1, 2020); *United States v. Smith*, 954 F.3d 446 (1st Cir. 2020); *United States v. Shaw*, 957 F.3d 734 (7th Cir. 2020); *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019); *United States v. Jackson*, 945 F.3d 315 (5th Cir. 2019); *United States v. McDonald*, 944 F.3d 769 (8th Cir. 2019); *United States v. White*, 413 F. Supp. 3d 15, 36 (D.D.C. 2019). *But see United States v. Brown*, 803 F. App'x 322, 324 (11th Cir. 2020); *United States v. Blocker*, 378 F. Supp. 3d 1125, 1129–32 (N.D. Fla. 2019);

*United States v. Banuelos*, 2019 WL 2191788, at *2–3 (D.N.M. May 21, 2019). Many frame it as the straightforward reading of the plain language. *See Boulding*, 379 F. Supp. 3d at 652 ("Under the plain language of the Act, whether an offense is a 'covered offense' is determined by examining the statute that the defendant violated. If that statute is one for which the statutory penalties were modified by section 2 or 3 of the Fair Sentencing Act, it is a 'covered offense.'") (citing *United States v. Davis*, 423 F. Supp. 3d 13, 16 (W.D.N.Y. 2019)); *see also Wirsing*, 943 F.3d at 186.

The majority position invites strange outcomes. Section 2 of the Fair Sentencing Act left intact mandatory minimums for defendants responsible for 280 grams or more of crack cocaine. Before the Act, defendants responsible for such quantities were sentenced under a 10-year mandatory minimum regime. After the Act, defendants responsible for such quantities were sentenced under the same 10-year mandatory minimum regime. In other words, § 2 of the Fair Sentencing Act had no effect on the sentencing exposure for high-quantity defendants. The Act had set out to modify lower-bound cocaine base penalties, not to invite courts to reduce the sentences of any pre-Act offender.

Does the plain language of the § 404(a) really entitle high-quantity defendants to another bite at the apple? The textual dispute mostly turns on how best to diagram a key sentence: "[T]he term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . , that was committed before August 3, 2010." 132 Stat. 5194 § 404(a). Are the "statutory penalties" in the second clause referring to those associated with "a Federal criminal statute," or with a "*violation* of a Federal criminal statute"? In the case of the former, actual conduct is irrelevant and the second clause is clarifying § 404(a)'s sole reliance on the criminal statute's language. But under

6

the latter interpretation the "statutory penalties" are those associated with the violation itself, focusing more on the breach than the rule.

One grammatical clue is the use of the prepositional phrase "for which," as opposed to "of which." The penalty, after all, is *for* the violation, but it is *of* the statute. Saying "the penalty for the statute is ten years" is a lazy (and imprecise) way of saying "the penalty for *violating* the statute is ten years." Better yet, one could say "the statute's penalty is ten years," which itself is a better-sounding arrangement of "the penalty of the statute is ten years." The Court can imagine identical sentence structures that might add color to the more abstract language of the Act. Sports provide useful illustrations: "A pop fly is the hitting of a baseball, the arc *of which* is sharply skyward within the ballpark, during an at bat." Here, "the arc of which" clearly modifies "baseball." On the other hand: "A strike is the knocking down of all ten pins, the reward *for which* is ten points, plus a bonus in the next round." Here, "the reward for which" clearly modifies the knocking down of the pins, not the pins themselves. If § 404 had read "a violation of a Federal criminal statute, the statutory penalties *of* which were modified by section 2 or 3 of the Fair Sentencing Act," the clumsy phrasing would have been redeemed by clarity of reference. The choice of "for which," however, suggests that the First Step Act conditions eligibility on the penalties for the actual violations.

Another textual clue is the inclusion of the word "statutory" in "the statutory penalties for which." If the penalties are drawn from "a Federal criminal statute," clarifying those penalties as "statutory" seems wholly redundant. Courts that addressed this issue found "The use of the term 'statutory' simply indicates that the penalties modified must be the penalties prescribed by statute, as opposed to a change in the Sentencing Guidelines, for example." *United States v. Martin*, No. 03-CR-795, 2019 WL 2571148, at *3 (E.D.N.Y. June 20, 2019). But of what

relevance are the Guidelines in this context? The penalties referred to are only those that "were modified by section 2 or 3 of the Fair Sentencing Act of 2010." 132 Stat. 5194 § 404(a). Those sections modify statutes; neither refers to or alters the Guidelines. "The *Guidelines* penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010" would make no sense. Here, the phrase "statutory penalties" either relates back to a "violation" or else is purely redundant, but it does not distinguish the already-inapplicable Guidelines.

A rebuttal interpretation posits that even if the second clause modifies "violation" instead of "Federal criminal statute," that "violation" may simply refer to the breach of the statute rather than the defendant's specific conduct. *See United States v. Askins*, No. CR-02-00645-001, 2019 WL 3800227, at *5 (D. Ariz. Aug. 6, 2019). The counterargument centers around the Supreme Court's language in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985) ("[T]he term 'violation' does not imply a criminal conviction. It refers only to a failure to adhere to legal requirements.") (internal citation omitted). Criminal conduct infers a violation even if nothing is ever discovered or charged—does specifying the violation is "of a Federal criminal statute" cabin the nature of the violation to the terms of the indictment? This Court is not persuaded it does.

There is some question as to the constitutionality of the minority approach. Palmer argues that he is entitled to a reduced sentence under the First Step Act because to deny such relief would violate the principle for which the landmark Supreme Court decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013) stand, namely, "any fact that increases the statutory mandatory minimum sentence is an element of the crime that must be submitted to the jury and found beyond a reasonable doubt." *See* Suppl. Mot. for Reduced Sentence 11, ECF. No. 480. Yet, Palmer's indictment specified that he was responsible

for at least 1,500 grams of crack cocaine, which the jury unanimously found. *Palmer,* 902 F. Supp. 2d at 5, *aff'd* 854 F.3d 39. What's more, § 404 can only reduce a defendant's sentence, whereas *Apprendi* and *Alleyne* concern only sentence increases. Finally, § 404 relief is discretionary, while *Apprendi* and *Alleyne* cover constitutional entitlements. *See White*, 413 F. Supp. 3d at 33.

The PSR conservatively estimated that Palmer's operation distributed at least 150 kilograms of crack cocaine. The trial judge noted at sentencing that "[Palmer's] organization 'created havoc and misery in their path' for several years, selling an 'estimated 100 and 200 kilos of crack'. . . for which they earned a total of 'perhaps as much as 5 to $10 million.'" *Palmer*, 854 F.3d at 50 (quoting *Palmer,* 902 F. Supp. 2d at 4). Even the lower estimate of 100 kilograms is nearly 12 times the new threshold quantity of 8.4 kilograms to trigger a life sentence under the Fair Sentencing Act. This Court's instinct is that Congress meant what it said, and that it did not intend to sweep in defendants who were still above the increased mandatory minimum quantity threshold.

### B. Even If Palmer Were Eligible for Resentencing, This Court Would Not Reduce His Sentence.

Despite the Court's suspicions of the popular interpretation of § 404(a), it need not incorporate the issue into its holding. Section 404(c) imparts substantial discretion to the district court: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." § 404(c), 132 Stat. at 5222. Section 404 does not provide a "freestanding remedy to retroactively reduce sentences," Mot. for Reduced Sentence 5, ECF. No. 475, nor does it create a "plenary" resentencing proceeding requiring a hearing. Suppl. Mot. for Reduced Sentence 1, ECF. No. 480. *See, e.g.*, *White*, 413 F. Supp. 3d at 38–39 ("[C]ontrary to the defendants' assertions, this means that the defendants are entitled to adjustments in their

9

otherwise final sentences only as expressly authorized in Section 404, and are not entitled to a plenary resentencing hearing, at which the defendants are present."). "That [a defendant] is eligible for resentencing does not mean he is entitled to it." *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019) (quoting *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019)); *see also United States v. Sellers*, 776 F. App'x 143 (4th Cir. 2019); *United States v. Anderson*, 795 F. App'x 798 (11th Cir. 2020).

Even if Palmer were eligible under the First Step Act—via the rule of lenity or on the merits—the Court would not in its discretion grant his motion for a reduced sentence. Palmer is not the type of offender contemplated by either the Fair Sentencing Act or the First Step Act. The Fair Sentencing Act sought to reduce sentencing disparities between crack and powder cocaine defendants by reforming the sentencing regimes applicable to crack cocaine defendants. Section 404 of the First Step Act merely authorized the retroactive application of the Fair Sentencing Act. Palmer faces no disparity between the mandatory minimum he was sentenced under and the one he would have faced "if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time." 132 Stat. 5194 § 404(b).

Additionally, this Court does not agree with Palmer that a reduction is "warranted" under 18 U.S.C. § 3553. Reply 4–5, ECF No. 494. Section 3553 lays out factors to be considered in imposing a sentence, which is precisely what the Court declines to do here. Even if this Court were to consider the § 3553 factors, Palmer's sentence remains appropriate based on (1) "the nature and circumstances of the offense and the history and characteristics of the defendant" and (2) "the need for the sentence imposed—to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. §§ 3553(a)(1)-(2). As the trial judge observed at sentencing, "[i]n addition to supplying 'thousands of men,

women and children with crack,' the organization possessed 'at least 27 guns, including a machine gun, submachine guns and sawed-off shotguns' that it used to 'terrorize and intimidate peaceful citizens as well as rival gangs.'" *Palmer,* 902 F. Supp. 2d at 4–5 (internal citations omitted) (quoting Sentencing Tr. at 2). Moreover, while incarcerated, Palmer has received sanctions for disciplinary infractions more than twenty times, with half of the incidents involving violence or a dangerous weapon. *See* Opp'n Ex. 1, ECF No. 492. Also, because a court is permitted to base its sentence "on any ground supported in the record," *United States v. Miller*, 890 F.3d 317, 328 (D.C. Cir. 2018) (quoting *United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010)), this Court considers Palmer's responsibility for significant quantities of crack cocaine, as supported by the record, to be a persuasive factor establishing the seriousness of the offense.

      The Court has carefully considered the impressive supportive letters the Court has received from Palmer's family members and friends. But the Court must also consider the impact of Palmer's criminal activities on the families of the thousands of men, women, and children that Judge Greene spoke about at Palmer's original sentencing. While this Court acknowledges the severity of Palmer's sentence, this Court also recognizes the severity of Palmer's crimes. Accordingly, the Court finds that a sentence reduction is not warranted, either in whole or in part, based upon the factual circumstances peculiar to Palmer's case, and that it would have imposed the same sentence even if he were subject to a higher threshold quantity at the time of sentencing.

## C. CONCLUSION

The Court is unconvinced that Palmer is eligible for a reduced sentence under § 404 of the First Step Act. Even assuming without deciding that Palmer is in fact eligible, the Court would not reduce Palmer's sentence. His motion is accordingly **DENIED**.

It is **SO ORDERED**.

SIGNED this 2nd day of July, 2020.

_____
Royce C. Lamberth
United States District Judge